UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 10-60244-CR-COOKE

UNITED STATES OF AMERICA,

    Plaintiff

v.

ARTURO MARRERO,

    Defendant.
_____/

# ORDER ON APPLICATION OF DEFENDANT ARTURO MARRERO FOR AN AWARD OF ATTORNEY'S FEES AND OTHER LITIGATION EXPENSES PURSUANT TO THE HYDE AMENDMENT

THIS MATTER is before me on Defendant Arturo Marrero's Application for an Award of Attorney's Fees and Other Litigation Expenses Pursuant to the Hyde Amendment (ECF No. 126). I have reviewed the parties' arguments, the record, and the relevant legal authorities. For the reasons explained in this Order, the Defendant's application is denied.

## I. BACKGROUND

On September 16, 2010, Defendant Arturo Marrero was indicted for one count of conspiracy to commit mail and wire fraud, from February 2001 through April 2006, in violation of 18 U.S.C. § 1349. (*See* Indictment, ECF No. 3). On January 18, 2011, a Superseding Indictment was filed which added a second count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h), and expanded the time period of the conspiracies to beginning in February 2000. (*See* Superseding Indictment, ECF No. 26). Specifically, the United States of America (the "Government") alleged that Marrero was involved in a conspiracy to use false commercial

invoices and false bills of lading to export millions of cigarettes from the Port of Miami to countries in the European Union in a deceptive manner. (*Id.*). The scheme's purpose was to avoid the payment of millions of dollars in import duties and taxes owed to the European countries. (*Id.*). The Government alleged that throughout this scheme to defraud the European countries, Marrero communicated with, and caused communications to be made with, his various co-conspirators located outside of the United States via email and facsimile communications. (*Id.*).

On March 30, 2011, Marrero moved to dismiss the Superseding Indictment as time-barred under the five-year statute of limitations for non-capital criminal cases.[1] (*See* Def.'s Mot. to Dismiss, ECF No. 44). Marrero argued that all of the alleged shipments to the European Union occurred outside the statute of limitations with the last shipment occurring on December 29, 2003.[2] Therefore, according to Marrero, the original Indictment was filed almost two years too late.

The Government responded that, although Marrero did not make any more shipments of cigarettes to European countries, the conspiracy still continued until April 2006. The Government's theory was that, in late 2004, almost a year after the previous shipment of cigarettes, Marrero imported over 1,300 master cases of cigarettes (the "Dorchester shipment")[3] into the United States with the intention of later smuggling them into Europe as part of the

---

[1] 18 U.S.C. § 3282(a) provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found … within five years next after such offense shall have been committed."

[2] Marrero also moved to dismiss the Superseding Indictment based on pre-indictment delay. (*See* Def.'s Mot. to Dismiss the Superseding Indictment, ECF No. 46). The motion was denied. (*See* Order on Def.'s Mots. to Dismiss the Superseding Indictment, ECF No. 58).

[3] During the course of the proceedings this shipment came to be called the "Dorchester shipment" to differentiate it from the other shipments. Dorchester is a cigarette brand.

conspiracy. Marrero continued to store these cigarettes until April 2006, when he sold the stockpile of cigarettes to a broker in Fort Lauderdale, Florida, who later sold the cigarettes to a company in Panama. The Government alleged that Marrero only withdrew from the conspiracy and sold the cigarettes in April 2006, when he was unable to find a European buyer and had learned of an investigation into the smuggling of cigarettes out of the Port of Miami into European countries. The Government argued that while the Dorchester shipment was not smuggled into a European Union country, the storage of these cigarettes for the purpose of later smuggling them into the European Union was essentially an "attempted" shipment and still a part of the conspiracy. According to the Government, this importation and storage of cigarettes extended the end of Marrero's involvement in the conspiracy to April 2006—within the five-year statute of limitations period. The Government argued that whether Marrero's storage of the Dorchester shipment was a part of the conspiracy—and therefore, whether the statute of limitations had run—was a factual issue for the jury to resolve.

On April 12, 2011, the Court held a hearing on, *inter alia*, Marrero's motion to dismiss. At the hearing, Marrero argued:

> [T]his Dorchester shipment in '04 to '06 had nothing to do with Europe at all. . . .
> . . . .
> So this '06 shipment that they're hanging their hat on to keep this indictment alive because it's so old, 2000 -- everything happened between 2000 and the end of '03 has nothing to do with the government's theory of prosecution. They may try to spin it that way, but it's not supported by the facts. And we're trying to have a pretrial evidentiary hearing on that fact so Your Honor can make that determination so it doesn't have to go to trial.
> But Your Honor's interpretation may be right. It's something that the jury may have to consider or Your Honor can consider at the end of all the evidence in a Rule 29 motion.

(Tr. of Mots. Hr'g 8, Apr. 12, 2011, ECF No. 65).

After hearing from both sides, the Court decided that, as to the Dorchester shipment and the statute of limitations:

> Those are all factual issues, when this conspiracy began, how long it went, who was involved, which companies were involved. Those all are things the government has a right to prove at trial. And if they fail to prove them at trial, then maybe a motion for Rule 29 is appropriate.

(ECF No. 65 at 26). The Court denied the motion. (ECF No. 58). At the same hearing, the Court addressed Marrero's motion for a bill of particulars. The Government engaged in the following discussion with the Court:

> THE COURT: So your contention is that during the course of this trial you will not be offering any other shipments except the ones to Germany, Ireland, and Portugal?
>
> MS. STONE: That's correct.
>
> THE COURT: Okay.
>
> MS. STONE: The allegation about the European Union is similar to the United States. We have 50 states here, the European Union is composed of states. Some of the –
>
> THE COURT: So your answer to that bill of particulars has been made. You now know, Counsel, it's only Germany, Ireland, and Portugal. And I will hold the government to that during trial.

(ECF No. 65 at 31).

On September 23, 2011, Marrero filed a motion in limine to exclude evidence pertaining to the Dorchester shipment on relevancy grounds. (Def.'s Mot. in Limine, ECF No. 87). The Court did not rule on the motion prior to trial. During the Government's case in chief at Marrero's second trial[4], Marrero raised the motion again. (Trial Tr. vol. VII, 74-75, Jan. 30, 2012, ECF No. 125). After hearing argument from both sides and considering the evidence that

---

[4] Marrero's first trial resulted in a mistrial due to juror misconduct, through no fault of either party.

had been presented at trial, the Court agreed that evidence pertaining to the Dorchester shipment was not relevant and granted Marrero's motion. (ECF No. 65 at 99).

In light of the Court's ruling, counsel for the Government stated that "it would be a breach of my duty as an officer of this Court" to continue pursing the case and conceded that without such evidence the statute of limitations barred the charged counts and moved to close its case. (ECF No. 125 at 128- 32). Marrero then formally moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (*Id.* at 132). The Court granted the Rule 29 motion stating: "I just want to say for the record, based upon the Government's representation, that this matter would be time barred, that the -- and the Government, electing not to proceed, the Defense's motion for judgment as to being time barred is granted." (*Id.* at 137). In addressing why the Court did not rule on the issue at the April 12, 2011 hearing regarding Marrero's motion to dismiss, the Court explained:

> I was concerned that the Defense was premature, that I had not heard the Government's case, and that there may well be.
> I mean, I -- I think that's one of the reasons why, in initially looking at this motion, why I delayed, because I thought that there was -- once hearing the trial, I would have been able to determine or better able to determine the relevancy of this evidence, and I didn't want -- I would have had -- all of the information that I have now, I wouldn't have had back when this motion was filed, and I think it would have been premature, at that juncture, for me to have made any kind of relevancy ruling, not knowing what the Government's proofs had been and the evidence that had been submitted.
> So even though this looks like it's late in the day -- it is technically late in the day, but I mean, I would not have been able, I think, to adequately think through the Government's presentation of their evidence, how the bills of lading linked to, you know, what occurs in Miami, then what goes here, and the invoice, and then how something ends up in another place. That would have been completely foreign to me during the early stages of the first trial or even this trial.

(*Id.* at 135-36). Counsel for Marrero then responded:

> Judge, I understand that. And you know, given the Court's rulings, I have no

5

> complaint, no matter how the ruling had come down, that the Court wanted to see the evidence about that. It would not be a legitimate complaint if there was one.
> And I appreciate Ms. Stone and Ms. Honrath's candor and adherence to the obligations that they have stated they owe the Court in their last statement, and I want to thank them for that as well. But I understand the Court's concerns.

(*Id.* at 136).

After the trial, on February 29, 2012, Marrero filed the instant application for an award of attorney's fees and other litigation expenses pursuant to the Hyde Amendment arguing that the Government's prosecution was "vexatious, frivolous, or in bad faith." (ECF No. 126 at 3-4).

## II. LEGAL STANDARDS

The Hyde Amendment provides for an award of attorney's fees and other litigation expenses to a prevailing party in certain federal criminal cases "where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust." Pub. L. No. 105–119, § 617, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes).[5] For a court to grant an application under the Hyde Amendment "a lot more is required . . . than a showing that the defendant prevailed at the pre-trial, trial, or appellate stages of the prosecution." *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999). The defendant has the burden to overcome the "daunting obstacle" of establishing by a preponderance of the evidence that the government's

---

[5] To recover fees and expenses under the Hyde Amendment, a defendant must also meet several other statutory requirements: "(1) his trial had been in progress during fiscal year 1998 or a subsequent year; (2) his net worth was less than two million dollars; (3) he had been a 'prevailing party' in his criminal case, even though subject to possible retrial upon remand; (4) that his legal representation was not the result of court-appointment; and (5) his attorney's fees and costs are 'reasonable.'" *United States v. Adkinson*, 247 F.3d 1289, 1291 n.2 (11th Cir. 2001) (per curiam) (citing Hyde Amendment, 18 U.S.C. § 3006A; 28 U.S.C. § 2412). Marrero asserts that he meets these requirements. The Government disputes that Marrero's net worth was less than two million dollars. Because this Court finds that the Government's position in this case was not vexatious, frivolous, or in bad faith, it is unnecessary to make a finding as to Marrero's net worth.

position was vexatious, frivolous, or in bad faith. *Id.* at 1302; *United States v. Adkinson*, 247 F.3d 1289, 1291 (11th Cir. 2001) (per curiam). Vexatious is defined as "without reasonable or probable cause or excuse." *Gilbert*, 198 F.3d at 1298-99 (internal quotations omitted). Frivolous means "[g]roundless . . . with little prospect of success; often brought to embarrass or annoy the defendant." *Id.* at 1299 (internal quotations omitted). Finally, bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *Id.* at 1299 (internal quotations omitted).

The Hyde Amendment is "targeted at prosecutorial misconduct, not prosecutorial mistake." *Id.* at 1304. Therefore, to succeed in obtaining an award for fees and expenses under the Hyde Amendment, "[a] defendant must "show that the government's position underlying the prosecution amounts to prosecutorial misconduct." *Gilbert*, 198 F.3d at 1299.

### III. ANALYSIS

Marrero asserts two grounds in support of his claim that the Government's position was vexatious, frivolous, or in bad faith. First, Marrero argues that the conspiracy charges against him lacked substantive merit. Second, he argues that the charges against him were "obviously" time-barred by the five-year statute of limitations.

#### A. Marrero's Claim that the Charges Against Him Lacked Substantive Merit

Marrero argues that the Government based its entire case on the fact that the shipping documents contained the generic description, "consumer commodity," allegedly to deceive authorities in foreign countries. Marrero asserts that the charges against him lacked substantive merit because the Government knew that Marrero also used the proper Harmonized Tariff

7

Schedule code ("HTC") to identify his cigarette shipments to Germany, Portugal, and Ireland. Marrero also argues that because U.S. Customs officials approved his shipping documents, the practice of describing cigarettes with a generic description (so long as the correct HTC was also used) must have been proper and therefore the Government's allegations were "totally baseless." (ECF No. 126 at 12).

The Government's theory of the case was that Marrero caused false bills of lading and commercial invoices to be prepared in order to deceive authorities as to the contents of certain shipments to avoid paying import duties and taxes. Evidence admitted at trial established that on multiple occasions Marrero omitted the word "cigarettes" from bills of lading while specifically identifying other products, such as yarn and furniture. The Government contends he did this to mislead authorities in order to avoid paying customs duties and taxes. In support of this contention, the Government points to the fact that Marrero actually used the word "cigarettes" instead of the HTC on certain documents when customs duties were not at issue. The Government argues that this "selective use of the term 'cigarettes' is evidence of [Marrero's] intent to defraud." (ECF No. 130 at 25).

"A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citing *United States v. Svete*, 556 F.3d 1157, 1161, 1169 (11th Cir. 2009) (en banc)). Marrero's omission of the word "cigarettes" from shipping documents to European Union countries may be evidence of such a scheme to defraud. While one might call the Government's case weak, it could prove its case through circumstantial evidence. *See Maxwell*, 579 F.3d at 1299. I find that the Government had a colorable case that

8

was not vexatious, frivolous, or in bad faith. *See Gilbert*, 198 F.3d at 1304 (holding that for defendant to recover fees under the Hyde Amendment, the government's position must be "so obviously wrong as to be frivolous").

**B. Marrero's Claim that the Charges Against Him Were "Obviously" Time-Barred**

Marrero also alleges that the Government's prosecution was vexatious, frivolous, or in bad faith because it "was unambiguously and clearly time-barred under the five-year statute of limitations." (ECF No. 126 at 19). Marrero argues that because the Government filed the initial indictment almost seven years after Marrero's last shipment to the European Union, the Government "manufacture[d] a rationale" to make the charges timely by arguing that the Dorchester shipment continued the alleged conspiracy. (*Id.*). Marrero alleges that the Government did this knowing that he sold the Dorchester shipment to a Fort Lauderdale buyer, who then shipped the cigarettes to Panama, and did not involve any European country. Therefore, argues Marrero, the Government's contention that the conspiracy ended in 2006 "was entirely frivolous." (*Id.* at 20).

As noted above, the Eleventh Circuit has defined "frivolous" as "[g]roundless . . . with little prospect of success; often brought to embarrass or annoy the defendant." *Gilbert*, 198 F.3d at 1299 (internal quotations omitted). The Government was candid that the timeliness of the charges depended on how this Court would resolve the issue of the Dorchester shipment. Though perhaps weak, the Government's argument for how the Dorchester shipment related to the conspiracy was not frivolous or groundless, and the Government explained its reasoning at both the April 12, 2011 hearing and at trial. When I ruled that the issue would best be resolved at trial either by jury or on a Rule 29 motion, the Government proceeded to trial and tried to admit

9

evidence of the Dorchester shipment. The Government was careful to explain its reasoning as to how it thought the Dorchester shipment was relevant, and though incorrect, the Government's position was not a vexatious, frivolous, or bad faith reading of the evidence.

While I ultimately disagreed with the Government and found the evidence not to be relevant, the Government's argument was not "so utterly without foundation in law or facts as to be frivolous." *Gilbert*, 198 F.3d at 1299. Moreover, the Government did not attempt to press on with this case once it determined it would have no chance of success. Immediately after the Court's ruling, the Government candidly conceded that the statute of limitations was dispositive. Even Marrero's counsel lauded the Government's candor on this issue.

The Hyde Amendment does not go so far as to impose liability on the Government for not correctly predicting a court's evidentiary ruling. As one court noted:

> The trial process is fluid and involves multiple strategic and evidentiary decisions, many of which cannot be predicted at the outset, and many of which depend on contested evidentiary and other trial rulings-not to mention the uncertainties associated with witnesses' testimony. The trial process also implicates judgment, strategy and prosecutorial discretion. This is not to say that prosecutors may operate without limits, but simply that the test for awarding fees under the Hyde Amendment should not be an exercise in 20/20 hindsight based solely on reasonableness.

*United States v. Sherburne*, 249 F.3d 1121, 1127 (9th Cir. 2001). Marrero fails to meet his, admittedly high, burden to prove that the Government's position was vexatious, frivolous, or in bad faith.

### IV. CONCLUSION

For the reasons explained in this Order, Defendant Arturo Marrero's Application for an Award of Attorney's Fees and Other Litigation Expenses Pursuant to the Hyde Amendment (ECF No. 126) is **DENIED**.

10

**DONE and ORDERED** in chambers, at Miami, Florida, this 30th day of April 2012.

_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge